No. 62.—Isaac Brown, plaintiff in error, *vs.* Aquilla Chaney, defendant in error.

Where A endorses a note to B, "to be liable only in second instance," and B sues C, one of the makers, who pleads a release from A, while the holder of the note, and is discharged by the judgment of the Justice's Court, that judgment is only *prima facie* evidence, at best, in a subsequent suit against A. To make it *conclusive* testimony of B's right to recover, notice to A of the first action was indispensably necessary.

Algernon S. Speer and Alexander Speer made six thirty dollar notes, payable to one William Hayman, or bearer, dated 16th of February, 1839, and due the 25th of December thereafter. Hayman transferred these notes to the plaintiff in error, who afterwards, on the 8th of February, 1842, endorsed them to the defendant in error, with the reservation that he was not to be liable in the first instance. The defendant sued Algernon S. Speer in the Justice's Court upon said notes, recovering final judg-

ments therein on the 6th of January, 1844, upon which judgments executions were issued, and returned *nulla bona*, before the commencement of the suit by defendant in error against the plaintiff in error.   Alexander Speer, the other maker of said notes, was also sued in the Justice's Court, who pleaded a discharge from liability on said notes (among other things), because the plaintiff in error, Brown, while the owner of said notes had given indulgence to the said Algernon S. Speer, who was principal in said notes, the said Alexander Speer being only the security ; whereupon, in the Justice's Court, the court, and *jury* on the appeal, gave judgment and verdict for the said Alexander Speer.   The defendant in error then commenced suit against the plaintiff in error, upon his said endorsement, in the Inferior Court of the county of Munroe, and which, on appeal, was tried in the Superior Court of said county, at March Term, 1846, before Judge Floyd.

Upon this trial the counsel for the defendant in error introduced, and read in evidence, the said six notes, and the said endorsement thereon of the plaintiff in error.   Also, the judgments in the Justice's Court against the said Algernon S. Speer, and the return of *nulla bona* made on the executions issued therefrom, before the commencement of the suit against the plaintiff in error.   Also, several witnesses were introduced, and proved the said Algernon S. Speer's general insolvency ; and also *fi.fas.*, from the Superior and Inferior Courts against said Algernon S.Speer, with returns of *nulla bona* thereon.   The counsel for the plaintiff in error also proved that the other maker, Alexander Speer, had also been sued in the Justice's Court on said notes, and that he had been released from further liability on said notes : first by the judgment of the Justice's Court, and secondly by a verdict of the jury on the appeal trial in the Justice's Court ; which was proved by the introduction of the notes, and the entries thereon, and by the justice's docket, and the entries thereon, and which took place before the commencement of this suit. It was also proved, by the said Alexander Speer, a witness introduced by the plaintiff in error, that there was neither fraud nor collusion between himself and the defendant in error in the Justice's Court, and his counsel in procuring his said release in the Justice's Court, that was in his knowledge.   The defendant in error here closed his case.   The defendant's counsel then tendered in evidence the plea of the said Alexander Speer in the Justice's Court, and the interrogatories filed and read, in the Justice's Court, in support of said plea ; which, being objected to, was rejected by the court below, upon the ground that the interrogatories taken in a justice's court could not be read as evidence in the Superior Court.

The counsel contended that the plaintiff in error was not concluded by the judgment of the Justice's Court, and that he might show that said Alexander Speer was not lawfully discharged from liability on said notes by the said verdict and judgment in the Justice's Court.

Whereupon the court below held that the Justice's Court, having jurisdiction of the parties to the suit in that court, and of the subject matter, their judgment was conclusive upon third persons, unless attacked for *fraud*.

To which decisions of the court below, the counsel for the plaintiff in error excepted.

*By the Court—*LUMPKIN, Judge.

The question for the opinion of this court is : what shall be the force and effect of the judgment rendered in the Justice's Court in favor of Alexander Speer, in the suit subsequently instituted by Aquilla Chaney against Isaac Brown ? The court below was unquestionably correct in rejecting the testimony tendered by the counsel of Brown, to impeach that judgment, not because interrogatories, taken in the Justice's Court, could not be read in the Superior Court, but because that judgment could not thus be collaterally attacked : *Expedit reipublicæ ut sit finis litium.*

The peace and happiness of the community, as well as the respect due to the judicial tribunals of the country, alike require that this ancient maxim of the law should not be disregarded. But is the broad proposition maintainable, assumed by the circuit judge, that the judgment of this court was conclusive upon *third* persons, unless attacked for *fraud* or *collusion ?* We think not. On the contrary, as a general rule, we hold the very reverse of this proposition to be true : namely, that a verdict cannot be evidence for either party, in an action against one who was a *stranger* to the former proceeding—who had no opportunity to examine witnesses or to defend himself, or to appeal against the judgment; and this is a most obvious principle of justice.—*Paynes* vs. *Coles*, 1. *Mun.* 373 ; *Jackson* vs. *Vedder,* 3 *John. Rep.* 8; *Case* vs. *Reeve,* 14 *ib.* 78–81 ; *Twambly* vs. *Henely,* 4 *Mass. Rep.* 441–2 ; *Wood* vs. *Stephen,* 1 *Serg't and Rawle,* 175 ; *Johnson* vs. *Bourn,* 1 *Wash. Rep.* 187 ; *Cowles* vs. *Harts,* 3 *Conn. Rep.* 516 ; 4 *Term. Rep.* 590 ; 2 *Price,* 434. Even for a judgment to be evidence at all, it must be upon the *same point,* and between the *same parties* or *privies.*—*Mayhee* vs. *Avery,* 18 *Johns. Rep.* 354. To the general rule thus laid down, there are several exceptions, to which we need not advert in the present discussion.

It may be material to inquire, in what relation did *Brown* stand to the suit in the Justice's Court between Chaney and Speer ? Was he a party, or privy, or stranger ? · Under the term *parties,* the law includes all who are interested in the subject matter of litigation, who will be gainers or losers by its result, and for or against whom the record of the proceeding might be adduced in evidence in another trial ; those who have the right to be heard, and to offer testimony and examine the witnesses. *Privies* are those who are so connected with the *parties* in estate or in blood or in law, as to be identified with them in interest, and consequently to be affected with them by the litigation, as lessor and lessee, heir and ancestor, executor and testator : all others not included in either of these classes are, of course, *strangers.*

Now, it is apparent that Brown, who had endorsed the Speer notes, to be liable in the second instance, was deeply concerned in the controversy between Chaney and Alexander Speer. If the money could not be made out of the makers, recourse over would be had against him by the endorsee. For what purpose, then, was the Justice's Court's judgment admissible, and was Brown concluded by it ? Like the judgments of all other courts, being a public transaction, rendered by public authority, and being presumed to be faithfully recorded, it was admissible to prove the fact that such a judgment was rendered. But in the absence of notice to Brown, we hold that it was not conclusive evidence to establish the fact of the

release of Alexander Speer.    Whether it was evidence at all of the fact upon which the judgment was founded, namely : the discharge of A. Speer, unless Brown had been notified of the defence, is exceedingly doubtful ; but as no objection was made by defendant's counsel to the competency of this testimony, we will waive any further investigation upon that point.

Kip against Brigham and others, (6 *Johns. Rep.* 158,) was an action brought by the sheriff of Oneida county, against the defendants on a bond given as security for the jail liberties granted to the defendant, Abel Brigham, who had been arrested and imprisoned on a *ca. sa.* at the instance of John Bissell.    At the trial, the sheriff gave in evidence the record of a recovery against him in favor of Bissell, for the escape of the defendant, Brigham ; that, immediately after the suit was commenced against the plaintiff, *he gave notice thereof to the defendants,* and the suit was regularly defended by the plaintiff, *aided by the active co-operation of the defendant's counsel.*    The judge ruled, that the record of the recovery in that suit was *conclusive* against the defendants in this suit, unless they could show fraud or collusion between the plaintiff and Bissell ; and he rejected evidence offered by the defendants, to controvert the fact of the escape ; and very properly ruled, that after notice to the defendants, and their assuming the defence, the recovery was conclusive that the sheriff had been damnified to that extent.

In the case of the State of Ohio, for the use of *Fulton & Co.* vs. *C. Colerick,* late sheriff and others, (3 *Ohio, Rep.* 487,) a judgment against the sheriff, for a false return on an execution, was offered in evidence, on the proceeding to assess the damages against his securities, and objected to by them as inadmissible.    The court say: " We take the distinction to be, that where the securities have notice of the suit, and may or do make defence, the judgment against the principal is conclusive against them.    Where such notice is not given, the judgment against the principal is *prima facie* only.    It may be impeached for collusion or mistake, but until so impeached, it is sufficient to entitle the plaintiff to recover the amount for which it is rendered."—See *Commissioners of Brown* vs. *Butt,* 2 *Ohio, Rep.* 347.

*Burrell* vs. *West, Jr.* (2 *N. H. Rep.* 192,) was an action of assumpsit founded upon a promise, made by the defendant, to indemnify the plaintiff, a constable, for making sale of a chattel upon a writ of execution in favor of of the defendant, against one W. West.    The amount of the defendant's undertaking, (says the judge's report of the facts,) was to save the plaintiff harmless from the claims of all persons having a better title to the chattel than that of the debtor.    The plaintiff produced in evidence the record of a judgment, by which it appeared that one Joshua Ames had recovered, against the plaintiff, damages and costs in an action of trespass, for taking the chattel in question.  Chief Justice Richardson says : " A verdict or judgment in a former action upon the same matter directly in question, is evidence, not only for or against the parties to the suit, but for or against privies in blood, privies in estate and privies in law.    But neither a verdict nor judgment can, in general, be evidence for either party in an action against one who was a stranger to the former proceeding, and who had no opportunity to examine witnesses or defend himself.    It is not necessary that he, against whom a judgment is to be used as evidence, should have been actually a

party to the suit in which it was rendered; but in general, notice of the suit and opportunity to be heard seem indispensable to make the judgment evidence."

In the case of *Hamilton* vs. *Cutts, et al. Exrs.* (4 *Mass. Rep.* 352,) Parsons, C. J., held, that an eviction by force of a judgment at law, *with notice of the suit to the warrantor,* the judgment itself would be plenary evidence, in an action of *covenant broken,* unless impeached for fraud.

In *Clark's Exrs.* vs. *Carrington,* (7 *Cranch Rep.* 322,) Chief Justice Marshall thought, that in such a case, a judgment against a person to be indemnified, if fairly obtained, *especially if obtained on notice to the warrantor,* is admissible in a suit on the contract of indemnity.

In *Bond* vs. *Ward,* (1 *Nott and McCord, Rep.* 202,) Mr. Justice Johnson, who delivered the opinion of the court, says : It is unnecesary to the determination of this case, to enter into the general consideration of the question, whether notice is or is not necessary, where a recovery over is given by law, or secured by express contract. It is sufficient, and so I take the rule to be, that whenever the plaintiff relies upon a recovery against him, as the sole and conclusive evidence of his right to recover over, notice is indispensably necessary.

This whole doctrine is elaborately examined, in the case of *Munford and others* vs. *Overseers of the poor of Nottoway,* (2 *Rand. Rep.* 313,) and the following are some of the conclusions arrived at by the court : " The general rule is, that verdicts and judgments bind, *conclusively,* parties and privies, because privies in blood, in estate and in law, claim under the person against whom the judgment is rendered; and they, claiming his rights, are of course bound as he is. But as to all others, they are not conclusively binding, because it is unjust to bind a party by any proceeding, in which he had no opportunity of making a defence, of offering evidence, of cross-examining witnesses, or of appealing, if he was dissatisfied with the judgment. And this is called by the court, in *Burke* vs. *Granberry,* a ' golden rule.' "—*Gilmer's Rep.* 25. The following general doctrines have been established upon this head : In an action by the vendee of personal property against the vendor, upon a warranty of title, a judgment obtained against the vendee by a third person, claiming to be the rightful owner, in a *suit of which the vendor had no notice,* cannot be given in evidence to prove that the latter had not title.—*Stevens* vs. *Jack.* 3 *Yerg, Rep.* 403 ; *Saunders* vs. *Hamilton,* 2 *Hayw. Rep.* 226 ; *Jacob* vs. *Pierce,* 2 *Rawle Rep.* 204.

And where the assignee sued the assignor of a chose in action, held that a verdict and judgment in favor of the maker at the suit of the assignee, in which the jury found that the demand assigned had been paid previous to the assignment, could not be given in evidence to prove the fact thus found, *unless the assignor had due notice of the action, and an opportunity to meet the defence there set up.*———— vs. *Compton,* 3 *Bibb,* 214 ; 3 *Phil. on Ev.* 817. The judgment would be evidence to prove the fact of due diligence.—*ibid.* 215.

So, where the endorsee of a note sued the maker, and failed because the consideration was usurious, held, that the verdict and judgment were not evidence for the endorsee, in an action against the endorser, (who was also the original payee,) in order to establish the usury.—*Copp* vs. *McDugall,* 9 *Mass. Rep.* 1-4. The record is proof of the proceedings and judgment, and nothing more.—*ib.* The case of *principal and*

*security*, is more favored than that of any other parties, not being considered within the rule of *res inter alias acta*. And where the surety, being sued for the default of the principal, *gives him notice of the pendency of the suit, and requests him to defend it*, if the judgment goes against the security, the record is conclusive evidence for him, in a subsequent action against the principal for indemnity ; for the *principal has thus* virtually become party to it.—1 *Green. on Ev*. sec. 188. But suppose the security fail to give the notice, and the maker can prove that he has discharged the debt, would he be precluded by the judgment from his defence ? *Cowen and Hill*, in their notes on *Phillips*, deduce this as the result of an extensive research into the authorities ; where a party has the right of *recovery over* secured to him, either by operation of law or express contract, and *he has given the person responsible due notice of the suit*, the judgment, if obtained without fraud or collusion, will be conclusive evidence for him, against such person, upon any fact established by it. The latter cannot be viewed in the light of a mere stranger, *because he has the means of controverting the adverse claim, as though he were the nominal and real party* on record.—3 *Phil*. 817.

After this rapid survey of a few of the leading authorities, can it be seriously urged that a judgment of a court is conclusive upon *third* persons, unless impeached by fraud or collusion? Brown was not liable *ipso facto* upon his endorsement. Chaney had first to exercise due diligence, to make the money out of the original debtors. His judgment in the Justice's Court was conclusive, that he resorted to the proper means to collect the money out of the parties primarily liable. But in this attempt he is met by a plea, from one of the joint makers, who claimed to be security only, that Brown, while the holder of the notes, had, without his privity or consent, given indulgence to the principal, and that consequently he was released from further liability. Ought not Brown to have been notified of this defence ? And failing to do so, can Chaney give the judgment of release in evidence against Brown? At any rate, shall not Brown be allowed to controvert the fact established by it ? We are satisfied that he had the right, and that the court erred in precluding him from its exercise, in the opinion which it expressed, as to the effect of this judgment. It would be a gross violation of the great principles of justice, to say nothing of the modern practice of all civilized nations, to deprive a citizen of life, liberty or property unheard. Formerly, a recovery on a guardian's, administrator's, sheriff's and other official bonds, was held *conclusive* in a suit against the securities. But this doctrine is almost universally exploded. In some of the States, it is still allowed as *prima facie* evidence of the amount of damages.—*Baker* vs. *Preston*, *Gilm*. 235 ; *Jacobs* vs. *Hill*, 2 *Leigh's Rep*. 393. But in others it is rejected altogether, as inadmissible for the plaintiff.—*McKeller* vs. *Bowell*, 4 *Hawks' Rep*. 34 ; *Respublica* vs. *Davies*, 3 *Yeates' Rep*. 128. But to hold that a judgment is *conclusive* upon *third* persons, would be to overturn a uniform course of decisions from the Year Books to the present day.

In conclusion, we are all the opinion, and so award, that the judgment below is erroneous, and must be reversed, and a new trial ordered.

AMOS W. HAMMOND, for plaintiff in error, submitted the following authorities :

*Gilbert Ev.* 32.; 2 *Campbell*, 21; 2 *Car.. and Payne*, 345; (12 *Eng..* *Com. Law Rep.* 161.;) 4 *Phillips*, *notes* 557, 569, 803, 815, 821; text 1 *Phillips*, 326; *ib.* 321, *Note* 557; 1 *Douglass*, 40. A *fi. fa.* is not evidence, because the person against whom the *fi. fa.* issued is not the party. here.—*Dudley Geo. Rep.* 65, 193, 194; 7 *Cranch*, 271; 1 *Wheaton*, 6; 1 *Greenleaf Ev.* 220, 587, *note* 3, sec. 88, 577, 538, 539; 1 *Starkie Ev.* 191 *and note;* 1 *Russell*, 395; *N. C. Term Rep.* 186.

L. T. DOYAL insisted that the remedy of the plaintiff in error would have been by writ of *certiorari* to reverse the judgments in the Justice's Court, if they were irregular or illegally obtained. as alleged. Though not a party to the suits in that court, he was materially interested. The authorities clearly establish the principle, 'that any one whose interest is materially affected by an irregular proceeding, may apply to have the judgment reversed.—*R..M. Charlton. R.* 455; 8 *Greenleaf Rep.* 292; 10 *Mass.. Rep.* 64; 11 *ib.* 379; *N. C. Term Rep.* 184; 2 *Evans' Pothier,*, 353; 1 *Hargrave's Law Tr.* 468; 3 *Ed. Phillips Ev.* 276; 1 *Starkie Ev.* (*note*) 236; 2 *Swift's Dig.* 70; 3 *Tomlin's Law Dic.* 218.

2d. That a judgment of a court of competent jurisdiction cannot be impeached, except for fraud.—1 *Ves.* 150; 1 *Stark Ev.* 108, 210, 211, 212, 215, 241, 242, 236; 1 *Greenleaf Ev.* 668, 569, *note*, and cases there cited.

3d. The court below committee no error in rejecting the parol testimony offered to prove the proceedings in the Justice's Court. The record was higher evidence, and should have been produced.—*Greenleaf on Ev.* 83, 84, 85.