## SNIDER VS. GREATHOUSE ET AL.

Where a surety pays a debt, on default of his principal, there is such an implied assent, on the part of the principal, as will entitle the surety to maintain an action against him for money paid.

One of the distributees of an estate filed his bill, in a sister State, for his distributive share, against the administrator and his sureties in the administration bond, setting out the bond and all the proceedings in the administration. The administrator was a non-resident, and no actual notice was served upon him, nor did he appear to the suit: a decree was rendered against the heirs of a deceased surety, for their proportional part of the sum due. Execution was issued against the heirs, and returned satisfied, with a receipt thereon: HELD, That though the record of the proceeding and decree would not be valid as the foundation of an action against the administrator, for want of notice, it was admissible in an action against him, by the heirs, for money paid, as *prima facie* evidence of the sum due by the administrator, of the obligation of the heirs to pay, of the assent of the administrator to the payment, and of the actual payment of the money.

Where a joint judgment is rendered against several heirs of a deceased surety, and the money paid by them, they are entitled to maintain a joint action against the principal debtor for the sum paid.

*Appeal from the Circuit Court of Crawford County.*

Hon. A. B. GREENWOOD, Circuit Judge.

WALKER & GREEN, for the appellant. To sustain the count for money paid, it is necessary, 1st. That money should have been paid or expended by the plaintiff: 2d. That the defendant requested the plaintiff (expressly or impliedly) to pay the money for his use; and 3d. That the money should have been paid for a debt for which the defendant was originally or primarily liable to the third party. *Chitty on Con.* (7 *Amer. Ed.*) 592; *Morrison vs. Barkley*, 7 *Serg. & R.* 238; *Miller vs. Howry*, 3 *Penn. Rep.*

380 ; *Gardner vs. Cleveland,* 9 *Pick.* 337. Where several sure-
ties join in a suit for the recovery of money paid for their princi-
pal, it is necessary for them to prove that the money paid was a
joint fund, or raised on their joint credit. *Pearson vs. Parker,* 3 *N.
Hamp. Rep.* 366 ; *Jewett vs. Conforth,* 3 *Greenleaf,* 107; or they
should sue severally. *Gould vs. Gould,* 8 *Cowen* 168.

A decree or judgment is always admissible with a view to the
proof of the judgment itself, *as a fact,* and its legal consequen-
ces ; but not to prove the facts upon whose supposed existence
the judgment or decree was founded, ( 3 *Cow. & Hill's notes to
Phil. on Ev., p.* 820, *note* 582 ; 2 *Stark. Ev.* 183–4,) unless the
party against whom it is offered in evidence, had notice of the suit,
or an opportunity of making a defence.

Judgments or decrees obtained against persons resident abroad,
without notice to them, and an opportunity of defending, are not
admissible against them as evidence of indebtedness or as opera-
tive in any measure *in personam,* when offered in a neighboring
State. *Cow. & Hill's Notes,* 3 *vol., p.* 908. Notice by publica-
tion in a newspaper, is not sufficient. *Miller's Ex. vs. Miller,* 1
*Bailey's Rep.* 242 ; *Moren vs. Killibrew,* 2 *Yerger Rep.* 376 ;
*Cone vs. Cotton,* 2 *Blackford's Rep.* 82; *Rogers vs. Coleman, Har-
dins Rep.* 413. See, also, the cases of *Stevens vs. Jack,* 3 *Yerg.
Rep.* 403; *Sanders vs. Hamilton,* 2 *Hayw. Rep.* 226; *Jacob vs.
Pierce,* 2 *Rawle's Rep.* 204 ; *Maupin vs. Compton,* 3 *Bibb* 214.


Mr. Justice WALKER delivered the opinion of the Court.

The facts necessary to a proper determination of the questions
of law in this case, are, that Frederick Snider, of Hancock county,
Kentucky, died intestate, and that Nicholas V. Board, and Cor-
nelius Snider, were appointed administrators of his estate, and
executed bond for the faithful performance of their duties as such
administrators, with Rodolphus B. Greathouse, and Henry W.
Williams, as their sureties.

Thereafter, Cornelius Snider resigned his administration, and,
by an order of the County Court of said county, Board, the other

6B

administrator, executed another bond, for the faithful performance of his duties, with Philomon Dawson, John Wood, and Robert C. Beauchamp, as his sureties.

Subsequently Robert C. Beauchamp, who was appointed guardian for the heirs of Frederick Snider, filed a bill in chancery, in the Hancock Circuit Court, in Kentucky, against Cornelius Snider, Nicholas V. Board, and their securities, for an account for money, alleged to be due, upon the settlement of the administration, to the heirs of Frederick Snider, deceased.

At the time this suit was commenced, both the administrators had removed from the State of Kentucky, and no personal service of notice of the suit was had upon them, nor did they appear to the action. After personal service upon the securities, and constructive notice by publication upon the administrators, such proceedings were had, that a decree was rendered against John L. Greathouse, William L. Greathouse, Joseph L. Greathouse, and Isaac N. Greathouse, heirs of Rodolphus B. Greathouse, one of the sureties on the administration bond, for the sum of one hundred and fifty-seven dollars and fifty-two cents, their proportional part of the whole sum due by the sureties and decreed to be paid, with a like proportion of the costs.

Upon this decree, an execution issued against the defendants, heirs of Rodolphus B. Greathouse; and, under the statute of Kentucky, the debt was replevied with William S. Bates as security, in the replevin bond; said bond having the force and effect of a judgment: execution issued thereon, on the 4th day of October, 1850, against said defendants and Bates, their security. Which, as appears from the sheriff's return, was levied upon a negro, the property of John H. Greathouse. The return shows no disposition of the slave, and from the fact that within five days after the levy, the execution was returned, endorsed "satisfied in full," it is fair to presume that it was not satisfied by the sale of the negro, but by whom it does not appear; nor is it shown, in the receipt of the complainant, Beauchamp, who acknowledges the receipt of the full amount of the debt, by whom the money was paid.

To recover this money paid as security for the administrators under this decree, the heirs of Greathouse, the security upon the bond, brought this action in assumpsit in the Crawford Circuit Court, against Cornelius Snider and Nicholas V. Board. The declaration contains the usual money counts. The action was discontinued as to Board, who was not served with process. Cornelius Snider pleaded the general issue and the statute of limitation, upon which issue was taken, and the case submitted to the court sitting as a jury—the transcript of the record from Kentucky being the only evidence adduced. Judgment was rendered for the plaintiffs. The defendant moved for a new trial, upon the ground that the evidence was not sufficient to sustain the finding of the court in favor of the plaintiffs. The motion was overruled, and the defendant excepted and appealed.

The main question presented is, is the transcript of the record from Kentucky sufficient evidence to fix upon the defendant a legal liability to the plaintiffs for the sum of money, claimed to have been paid by them, on account of the security-ship of their father, for the defendant.

The objection to the admissibility of the record, or rather of the extent to which it may be used, and to fix the liability of the defendant to pay, is, that the decree was rendered upon the bond without actual notice to the defendant; he being at the time the suit was commenced, a non-resident of the State of Kentucky: and it is also contended that giving the record the full force and effect, contended for by the plaintiffs, that still it does not show a joint payment of the money by them; and, consequently, no joint right of action against the defendant.

To entitle the plaintiffs to recover, they were required to prove the payment of the money by them, and an express or implied assent, on the part of the defendant, to such payment. In this case there was an implied assent growing out of the legal liability of the security to pay.

STARKIE says, "The defendant's assent is implied in all cases, where the plaintiff is under a legal obligation to pay the money,

through the default of another, as when a security is compelled to pay money on the default of his principal." 2 *Stark. Ev.* 101.

To establish the implied assent to the payment, and also to show what amount the security was required to pay, the transcript of the record was introduced as well as to show by the return of process that the money was paid. The bonds, the amount of the estate which came to the defendant's hands, and the balance due them; as well as the decree, the execution and the return showing that it had been paid, all appear in the transcript. But the defendant objects that it is not evidence against him, because he was not, by actual service, made a party to the suit.

If the action had been debt upon the record, the objection would have been good, as held by this court at the present term in *Iglehart vs. Moore*. But as the suit was assumpsit, and the sole purpose of the record was to show an implied assent growing out of the legal obligation to pay the money which had been paid as security, through the default of the principal to pay, the question is, does the same rule apply as if the suit had been upon the judgment? We think not. It is very evident that the security might have been sued alone upon this bond. Such was held to be the case in *The People vs. Metter and Sims*, 1 *Scam.* 83.

In such suit, the court determines the liability of the security to pay: the breach is for the non-performance of the duty of the administrator: the damages, the sum ascertained to be paid. No doubt but that this sum may be coerced by law from the security; and shall we say that if it imposes a legal obligation upon him to pay the debt of his principal, that it is not sufficient evidence to raise an implied assent to such payment, and an assumpsit to refund the money so paid to the security. We should say not: nor do the decisions cited, and relied upon by the counsel for the defendant, when properly restricted to the state of facts, under which the decisions were made, deny the validity of the record for such purpose.

In the leading case, (*Maupin vs. Compton*, 3 *Bibb* 214,) Comp-

ton, the assignee, brought suit in Virginia, against Ellis, the maker of the note; and, upon the trial of the case, the jury found that the debt had been paid to Maupin, the assignor, before he assigned the note to Compton, and judgment was rendered in favor of Ellis. Compton then sued Maupin the assignor. On the trial of this suit, the only evidence introduced was the transcript of the record of the suit between Compton and Ellis in Virginia; of which suit, however, Maupin, the assignor, had no notice; the question arose upon the admissibility of the record as evidence. The court said : " In the present case, no suit was necessary against the obligor (if the demand was paid before the assignment) to authorize a recovery against Maupin, the assignor. The cause of action accrued virtually upon the assignment being made, nor was the fact of payment matter of record, but extraneous from it. The same necessity does not, therefore, exist in this, that did in the former case, to make the record evidence."

It will readily be perceived that the record was excluded as evidence in this case, because the payment having been made to Maupin before the assignment, a right of action accrued at the time the assignment was made, wholly independent of the determination of the suit in Virginia. But, in the case before us, the obligation to pay, on the part of the principal, arose upon the assessment of the damages by reason of the breach of the condition of his bond, and the payment of the money for him by his securities.

There is another class of cases in which notice has been held necessary, in order to make the record evidence sufficient to entitle the plaintiff to recover, relied upon as authority. They are where suit is brought upon the warranty of title upon eviction by a paramount title. The decisions go to the extent that the record of the eviction is sufficient evidence of an eviction, whether the grantor had notice of the suit, under which the eviction was had or not, but not of paramount title. In both these classes of cases, the legal liability upon the assignor and the grantor, are contingent, and arise solely upon the contingency that the money

cannot be made out of the payor, or that the grantee has been evicted by a paramount title.

But the liability of the security upon the bond is joint and several, and although he cannot have his recourse over against his principal, until he has paid the debt, still he is liable over to the creditor in the first instance ; and, upon the payment of the debt, after it becomes due, if it is liquidated, or after its liquidation, if not so, according to the terms of the contract, whether by process of law or not, an obligation is raised to pay the same.   Suppose the bond had been for the payment of a specific sum of money : after the bond fell due, an obligation would rest both on the principal and the security to pay, and the security might do so without suit.   In that event, he would have to prove the execution of the bond, by which he became security for the defendant, and the payment of the money to the obligee.   But where the obligation was to perform a duty, upon a failure to do which a legal liability accrued in damages for a breach of duty, if the security should undertake to pay what might be claimed as damages, without a suit, we presume he would do so at his peril; and would be required, in a suit against the principal, not only to show that he was security upon the bond, but also that the damages were really due.   When sued, however, and his liability and character as security brought into question, as well as the amount which he shall be required to pay, it would seem but just that the record evidence, which was held sufficient to impose a legal liability on him to pay, and his actual payment under the process of the court, would, if not conclusive, at least be *prima facie* evidence of his liability to pay, and that he was such security.   Suppose the principal be dead with no legal representative, or that he has absconded to parts unknown, and his security has been sued and made to pay his debt, if we were to hold that the security could not hold his estate liable, upon the recovery, had against him as security, he would not only be required to prove that he had paid the money, but also that the damages assessed were properly due and chargeable.   The result would be, that these facts must again

be submitted, for re-investagation, to some other court or jury, who, under a new or different state of facts, arising upon the evidences then adduced, might determine that the principal was chargeable with a less sum, than that recovered against him, and if he is to be bound by this, the security would, in good faith, under the judgment of the court, be compelled to pay money which he could never recover from his delinquent principal. In view of the equitable nature of the demand of a security against his principal for money paid, we cannot hold such to be the law, and in support of the conclusions at which we have arrived upon principle, there are several adjudged cases to which we will briefly refer.

In *Scott vs. Cleveland*, 3 *Mon. R., p.* 62, it was held, in an action of assumpsit by the assignee of a note against the assignor, that the transcript of a judgment, rendered in the State of Indiana, in favor of the maker, was admissible evidence in a suit against the assignor.

In *Barr vs. Gratz*, 4 *Wheaton*, 213, Judge STORY takes the distinction between the admissibility of the record, when the right claimed is founded upon the record recovery, and when introduced as part of a chain of evidence in the case, he says : "It is true that, in general, judgments and decrees are evidence only in suits between parties and privies. But the doctrine is wholly inapplicable to a case where the decree is not introduced as, *per se*, binding upon any rights of the other party, but as an introductory fact to a link in the chain of the plaintiff's title."

And Mr. GREENLEAF, in his work on evidence, *Vol.* 1, *page* 527, says : "A judgment when used by way of inducement, or to establish a collateral fact, may be admitted, though the parties are not the same. Thus, the record of a conviction may be shown, in order to prove the legal infamy of a witness; so it may be shown, in order to let in the proof of what was sworn at the trial, or to justify the proceedings in execution of the judgment. So it may be used to show that the suit was determined, or, in proper cases, to prove the amount which a principal has been com-

pelled to pay for the default of his agent, or the amount which a surety has been compelled to pay for the principal debtor : and, in general, to show the fact that the judgment was actually rendered at such a time, and for such amount."

These authorities clearly show that the record is admissible for such purpose, without reference to the fact, as to whether it should be considered as conclusive or only *prima facie;* probably the latter, as would appear from several decisions directly in point. *Haggerty vs. Bradford,* 9 *Ala. R.* 571, was a suit in assumpsit by the endorsee against the endorser, after a failure to recover of the maker of the note, the assignor having had no notice of the suit against the maker. GOLDTHWAIT, Judge, after considering the question in cases where notice has been given to the assignor, proceeds : " But what is the rule when no notice has been given. In *Scales vs. Wilson,* 9 *Leigh.* 473, the assignee of a bond in Virginia, submitted his action against the obligor to arbitration, and it was awarded in favor of the obligor, on account of set-offs against the assignor. On a suit against the assignor, he insisted that he was not bound by the judgment on the arbitration, but the court held it was *prima facie,* obligatory upon him. In *Trust vs. Gould,* 5 *Pick.* 380, one not connected with a suit had undertaken to indemnify an officer for a levy, and he was held, *prima facie,* bound by a judgment against the officer, although obtained without notice to the indemnitor. These cases (says the Judge) will authorize us in the conclusion that the judgment in favor of the maker, upon the merits of the note, is in all cases *prima facie* evidence against the endorser, and that it rests with him to show the defence then interposed was invalid.

In the case of *The State of Ohio vs. Colerick,* 3 *Ham. R.* 488, the court said: " We take the distinction to be, that where the securities have notice of ' the suit, and may or do make defence, the judgment against the principal is conclusive against them. When such notice is not given, the judgment against the principal is *prima facie* only. It may be impeached for collusion or

mistake; but, until so impeached, it is sufficient to entitle the plaintiff to recover the amount for which it is rendered."

In *Cobb vs. Haynes*, 8 *B. Monroe* 137, the precise question came up that is presented in this case. It was a suit in Kentucky to recover part of the sum paid by another security, who had been sued and compelled to pay the whole amount decreed to be due from the administrator to the heirs of the intestate. The first question was whether the record was evidence; that the defendant was a co-security upon the administration bond with the complainant, and it was held that the copy of a record from a court in Virginia, properly certified and containing a copy of the bond, purporting to be signed by the defendant, and not denied otherwise than by stating his want of recollection that he had ever signed it, should be taken as conclusive evidence of the fact of his signature, and touching the effect of the judgment upon the rights of the parties. It was further held, that the record was evidence of the pendency of the suit in Virginia, and the decree thereon rendered, is *prima facie* evidence of the extent of the liability of the co-security, and of the liability of the party sued in Kentucky, as co-security in the administration.

The record in the case before us, contains a copy of the bond and all the proceedings in the administration; and, was in our opinion, *prima facie* at least, sufficient evidence of the sum found due by the defendant as such administrator, and which the plaintiffs, as securities, were required to pay. And also of every other fact necessary to raise an implied assent, on the part of the defendant, to the payment made by the plaintiffs: and we are further of opinion that the process of execution, and the return and receipts upon it, sufficiently show the actual payment of the money.

The remaining question to be considered, is, whether such payment was a joint payment, or such as will entitle the plaintiffs to maintain a joint action for the sum paid.

These plaintiffs were the heirs of Rodolphus B. Greathouse. Their liability to pay arose upon the fact, we must presume, that his estate came into their hands: otherwise, they would not

have been responsible. It was their joint debt, then, as his heirs. The judgment was against them, and although the execution also issued against their security in the replevin bond, it is but just to presume that the money was paid by the principals, and as they were jointly liable, that it was a joint payment. Chief Justice SAVAGE, in *Gould vs. Gould*, 8 *Cowen* 170, remarks: "It is nothing to the defendants whether the funds, out of which the debt was paid, be joint as between securities, or several as to each. That is the concern of those only who own the fund."

And the doctrine laid down in *Siter vs. Howry*, 2 *Ham.* 211, and in 3 *Metc. R.* 169, sustains this view of the question, and shows that the objection is not well taken.

This question comes up upon execeptions to the opinion of the court, upon motion for a new trial, and upon a fair consideration of the whole case, we think substantial justice has been done. Affirmed.

Absent, Mr. Justice SCOTT.